Slip Op. 02 - 113

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - - - - - - - x
CO-STEEL RARITAN, INC., GS INDUSTRIES,
KEYSTONE CONSOLIDATED INDUSTRIES, INC.,   :
and NORTH STAR STEEL TEXAS, INC.,
                                          :
                         Plaintiffs,
                                          :
              v.
                                          :
UNITED STATES INTERNATIONAL TRADE         :   Court No. 01-00955
COMMISSION,
                                          :
                         Defendant,
                                          :
              -and-
                                          :
ALEXANDRIA NATIONAL IRON AND STEEL
COMPANY and SIDERURGICA DEL ORINOCO,      :
C.A.,
                                          :
              Intervenor-Defendants.
- - - - - - - - - - - - - - - - - - - - - x
```

Memorandum & Order

[Results of remand to the International Trade Commission affirmed.]

Dated: September 13, 2002

Collier Shannon Scott, PLLC (Paul C. Rosenthal, Kathleen W. Cannon, R. Alan Luberda and John M. Herrmann) for the plaintiffs.

Lyn M. Schlitt, General Counsel, James M. Lyons, Deputy General Counsel, and Karen Veninga Driscoll, Attorney, United States International Trade Commission, for the defendant.

Baker & McKenzie (Kevin M. O'Brien and Thomas Peele) for intervenor-defendant Alexandria National Iron and Steel Company.

White & Case LLP (David P. Houlihan, Lyle B. Vander Schaaf, Frank H. Morgan, Joseph H. Heckendorn and Jonathan Seiger) for intervenor-defendant Siderurgica del Orinoco, C.A.

DeKieffer & Horgan (J. Kevin Horgan, Marc E. Montalbine and Merritt R. Blakeslee) for proposed intervenor-defendants Saarstahl AG and Saarsteel Inc.

AQUILINO, Judge:  In its slip opinion 02-59, 26 CIT ___, ____ F.Supp.2d ____ (June 20, 2002), familiarity with which is presumed, the court remanded for reconsideration that part of the determination of defendant International Trade Commission ("ITC") sub nom. Carbon and Certain Alloy Steel Wire Rod From Brazil, Canada, Egypt, Germany, Indonesia, Mexico, Moldova, South Africa, Trinidad and Tobago, Turkey, Ukraine, and Venezuela, 66 Fed.Reg. 54,539 (Oct. 29, 2001), which terminated investigations with regard to subject imports from Egypt, South Africa and Venezuela.  In response to that order, defendant's counsel have filed Views of the Commission on Remand (Aug. 16, 2002) to the effect that

> imports of wire rod from Egypt, South Africa and Vene-zuela are not negligible, and that there is a reasonable indication that an industry in the United States is materially injured by reason of imports of wire rod from Egypt, South Africa and Venezuela that are allegedly sold in the United States at less than fair value.

Included in the written analysis in support of this conclusion is the following:

> . . . [W]e reconsidered negligibility based on Commerce's modified scope issued April 10, 2002.  . . .  [W]e considered official Commerce import statistics for the period of August 2000 through July 2001, supplemented with importer responses regarding imports of the products which have now been excluded by Commerce from the scope of investigations (1080 tire cord quality wire rod and 1080 tire bead quality wire rod, corresponding to the quality designations, definitions and applications Com-merce designated). The importers that submitted data on the modified scope accounted for 94.9 percent of U.S. imports of wire rod from the subject countries in 2000 and 88.9 percent of imports from all countries in 2000. Based on the modified scope, Egypt has a share of total imports of 1.5 percent; Germany, *** percent; South Africa, 2.8 percent; and Venezuela, 2.3 percent.  Each of

these countries is below the negligibility threshold of three percent of total imports.  The aggregate import share of these four countries, however, is \*\*\* percent, which exceeds the aggregate negligibility level of seven percent prescribed by statute.  19 U.S.C. §1677(24)(A)-(i) and (ii).  We therefore find, pursuant to 19 U.S.C. §1677(24)(A)(ii), and the Court's Order, that subject imports from Egypt, South Africa, and Venezuela are not negligible for purposes of our present material injury analysis.[1]

The plaintiffs move for expedited entry of final judgment, affirming this determination upon remand, on the stated ground that it "could potentially eliminate the need for future litigation arising out of that determination", given the ITC's "soon-to-be issued final determinations in the underlying agency investigations".

Intervenor-defendant Alexandria National Iron and Steel Company ("ANSDK") responds with a request that the court not affirm the foregoing determination, rather the ITC's original preliminary determination, on the grounds that the Commission has either misinterpreted the court's slip opinion 02-59 or "demonstrated clearly the procedural and legal defects that flow from the approach used by the [ITC]" and also that its remand determination misapplies 19 U.S.C. §1677(24).  On its part, intervenor-defendant

---

[1] Views of the Commission on Remand, pp. 10-11 (footnotes omitted).  The reference "Commerce's modified scope" is to that Department's Notice of Preliminary Determination of Sales at Less Than Fair Value:  Carbon and Certain Alloy Steel Wire Rod from Germany, 67 Fed.Reg. 17,384 (April 10, 2002).

The figure(s) with regard to Germany have been omitted from this public report in the interest of confidentiality.

Siderurgica del Orinoco, C.A. ("Sidor") objects to the Views of the Commission on Remand as being based, at least in part, upon an unlawful reopening of the ITC record; as failing to follow the plain meaning of the Trade Agreements Act of 1979, as amended; and as not being based on evidence that corresponds to the modified scope.[2]

I

Also before the court now is a motion for leave to intervene herein out of time by Saarstahl AG and Saarsteel Inc. as parties defendant.  The defendant has declined to consent to this motion, and the plaintiffs actively oppose it.   These adverse re-actions are well-founded.

The motion avers that Saarstahl is a German producer of carbon and certain alloy steel wire rod and "an interested party who was a party to the proceeding in connection with which th[is] matter arose" within the meaning of 28 U.S.C. §2631(j)(1)(B) and 19 U.S.C. §1677(9)(A).  Cf. 28 U.S.C. §2631(k)(1).  That is, Saar-stahl has been a party to the administrative proceedings before the International Trade Administration, U.S. Department of Commerce ("ITA") and ITC from the beginning[3] and has been directly impli-

---

[2] This statement of Sidor objections has been followed by a formal motion for oral argument thereon, which motion can be, and it hereby is, denied, given the quality of the papers submitted on all sides.

[3] See, e.g., ITA Notice of Preliminary Determination, supra n. 1, 67 Fed.Reg. at 17,384 (Case History).

cated by the latter's above-cited, original, affirmative, prelimi-
nary determination of reasonable indication of material injury to
the domestic industry by reason of German exports to the United
States that has been the core of this case.  As such, it had a
right to intervene herein pursuant to the foregoing statutory
authority and USCIT Rule 24(a), independent of any subsequent ITA
modification of the scope of the investigation(s), which, in the
Views of the Commission on Remand, continues to implicate imports
from Germany in an affirmative manner.

        Of course, Saarstahl's able counsel understand, even
concede, this circumstance in now positing their motion "out of
time" pursuant to Rule 24(a), which provides that, in an action
described in 28 U.S.C. §1581(c), which this case is,

> a timely application shall be made no later than 30 days
> after the date of service of the complaint as provided
> for in Rule 3(f), unless for good cause shown at such
> later time for the following reasons: (1) mistake,
> inadvertence, surprise or excusable neglect; or (2) under
> circumstances in which by due diligence a motion to
> intervene under this subsection could not have been made
> within the 30-day period.

They must also understand that this rule does not amount to
permissive intervention in a case of this kind.  See Geum Poong
Corp. v. United States, 26 CIT ___, ___ F.Supp.2d ___, Slip Op. 02-
84, pp. 4-5 and n. 5 (Aug. 6, 2002), appeals docketed, Nos. 02-
1573, 02-1578 (Fed.Cir.  Aug. 30 and Sept. 6, 2002).  Indeed, on
September 6, 2002, this court granted the motion of another
"interested" German producer for leave to intervene as a party

defendant in <u>Committee for Fair Beam Imports v. United States</u>, CIT No. 02-00531, wherein the same counsel as here correctly confirmed that such a motion "must" be filed no later than 30 days after the date when a complaint is filed.

The sum and substance of their motion in this case is stated to be that,

> [b]ecause plaintiffs are now attempting to use this litigation regarding the Commission's preliminary deter- mination to influence [it]s final investigation, inter- vention is appropriate at this time. The Commission's rescission in its remand determination of its earlier negligibility determination with respect to Egypt, South Africa, and Venezuela raises the possibility that the seven-percent exception to the negligibility statute will be triggered. If this occurs, German imports will be rendered non-negligible, notwithstanding that they fall below the three-percent negligibility threshold. Saar- stahl respectfully submits that this substantial change in its posture in the Commission's investigations con- stitutes good cause for its intervention out of time.

Saarstahl Motion for Leave to Intervene, third page (footnote omitted). This court cannot concur. On its face, the foregoing reasoning is not equatable with the "good cause" spelled out by the above rule. Secondly, the goal of complaints filed in court about preliminary agency determinations invariably is to correct per- ceived errors -- in anticipation of a final determination in accordance with law. Finally, to repeat, Saarstahl has been, and remains, implicated in this matter, one way or the other. Hence, it is not subject to the exception(s) to the 30-day standard of USCIT Rule 24(a), <u>supra</u>, and its motion made pursuant thereto must therefore be, and the same hereby is, denied.

II

As for the interested parties that have sought and obtained in a timely manner leave to intervene herein as defendants, both ANSDK and Sidor contend that the Views of the Commission on Remand misapply the statute which governs this case, 19 U.S.C. §1677(24), and was discussed in slip opinion 02-59. But the ITC correctly interpreted that opinion as not directing it to base its remand determinations, including its domestic like product and industry findings, entirely on the ITA's modified scope.[4] Moreover, the commissioners report that they do not believe that their domestic like product and industry findings would be different if they were based on the modified scope because

> the record reflects a continuum of wire rod products without clear dividing lines, including no clear dividing line between 1080 tire cord wire rod, 1080 tire bead wire rod, as described in Commerce's modified scope of investigations, and other high quality specialized wire rod products. Under these circumstances, the Commission does not treat each item of merchandise to be a separate domestic like product that is only "like" its counterpart in the scope, but rather considers the continuum itself to constitute the domestic like product.[5]

The ANSDK thesis is that, if the change in scope had resulted in a change in the domestic like-product definition, then the result could well have been different now, but, in the absence of change in the latter, the negligibility determination under the statute does not change. ANSDK's Comments, pp. 13-14. Accord: Sidor Ob-

---

[4] Views of the Commission on Remand, p. 8.

[5] Id. at 8-9 (footnotes omitted).

jections, p. 6.  Both intervenor-defendants focus on footnote 29 to the Views of the Commission on Remand stating that, upon "[r]eading 19 U.S.C. §1673b(a)(1) together with 19 U.S.C. §1677(24)(A)(i), it is clear that the 'merchandise' referred to in the negligibility provision is subject merchandise."  Each considers this a meaningful misreading of the two statutory sections.  E.g., ANSDK Comments, p. 15 ("The lack of . . . reference to 'subject merchandise' in Section 1677(24) strongly indicates that the merchandise is to be identified with reference to the domestic-like product from all countries"); Sidor Objections, p. 7 ("The choice of the 'domestic like product' rather than 'subject merchandise' in the negligibility provision must be viewed as a deliberate one").

Perhaps, each misunderstands the ITC's note.  Sidor, for example, argues that, to

> construe the statute in the manner suggested by the Commission . . . means that the term "merchandise" in section 1677(24)[A](i) is "subject merchandise" both in the numerator and the denominator of the negligibility ratio.  There is no logical or consistent way of interpreting the statute to avoid this result if section 1673-b(A)(1)'s use of the term "subject merchandise" is interpreted as defining merchandise in section 1677(24)[A](i).

Sidor Objections, p. 10. While it is indeed clear that the purview of the negligibility section(s) of the statute is subject merchandise, it does not necessarily follow that 19 U.S.C. §1677(24)(A)(i) must be parsed as if actually written with "subject" supplementing either "merchandise", the "numerator", or "such merchandise", the

"denominator", in that section, nor do the <u>Views of the Commission</u>

<u>on Remand</u> show otherwise.  To repeat,

> [t]he importers that submitted data on the modified scope
> accounted for 94.9 percent U.S. imports of wire rod from
> the subject countries in 2000 and 88.9 percent of imports
> from all countries in 2000.[6]

Whereupon the percentages of *total* imports from all countries for

Egypt, Germany, South Africa, and Venezuela were calculated and

reported therein and quoted hereinabove.

        ANSDK interprets the ITC's reaction to slip opinion 02-59

as "discomfort"[7] purportedly so "severe"[8] as to have engendered

"misunderstanding"[9] and "significant difficulties"[10] in reading it

correctly.  In short, ANSDK argues that "the Commission did not do

what the Court instructed."[11]  It makes this argument by pointing

out that this court did not direct the ITC "to create a new record

based on events occurring months later"[12], or "to reopen the record

eight months later and pretend that a different record existed

before the Commission in October, 2001"[13], or to "create makeshift

---

        [6] <u>Id</u>. at 11 (footnote omitted).

        [7] ANSDK Comments, pp. 1, 2, 4.

        [8] <u>Id</u>. at 2.

        [9] <u>Id</u>. at 4.

        [10] <u>Id</u>. at 5.

        [11] <u>Id</u>. at 9.

        [12] <u>Id</u>. at 5.

        [13] <u>Id</u>. at 6.

data bases for individual issues."[14]  Of course, slip opinion 02-59 would not and did not direct the agency in such a manner.  Rather, it left reconsideration of the issue of negligibility up to the discretion of the ITC in the light of the law and the facts and circumstances discussed therein.  And the court does not now find that the <u>Views of the Commission on Remand</u> are somehow violative of that opinion and order.

ANSDK recites *in haec verba* Defendant's Motion for Reconsideration and Stay dated July 22, 2002 with apparent approval and support.  But that motion was carefully weighed and then denied by the court on August 7, 2002.  To the extent ANSDK now seeks in its own right reconsideration of slip opinion 02-59[15], suffice it to state that all of the points raised have already been found wanting of any relief at this stage of the proceedings.

Sidor points out that slip opinion 02-59 did not order the defendant to re-open its record and argues that, for it to have done so on its own, was unlawful and

> broadened the implications of the Court's decision such
> that the legitimacy of all future Commission negative
> preliminary determinations will be judged based on later
> developed data.

Sidor Objections, p. 5.  The court has difficulty accepting this prophecy on the record developed.

---

[14] <u>Id</u>. at 9.

[15] <u>See</u> <u>id</u>. at 10-13.

        Be that as it may, Sidor also projects from the record that imports of subject merchandise from Germany will imminently account for more than three-percent of total imports, thereby excluding them from cumulation with those from Egypt, South Africa, and Venezuela.  Apparently, this argument to the effect that the ITC first consider negligibility in the context of threat of material injury pursuant to 19 U.S.C. §1677(24)(A)(iv) was made to the agency, which declined to do so, given the structure and language of section 1677(24)(A) as a whole.  See Views of the Commission on Remand, pp. 11-12, n. 33.  And the court cannot conclude that this declination by the ITC was not in accordance with law.

        The Views of the Commission on Remand proceed then to report the considerations of fungibility, geographic overlap, channels of distribution, and simultaneous presence of domestic like product and subject imports in concluding that there is a reasonable overlap among them from Egypt, South Africa, and Venezuela and other subject imports, and between all of them and the domestic like product.[16]  Finally, in determining that there is a reasonable indication that the domestic industry is materially injured by reason of subject imports from Egypt, South Africa, and Venezuela that are allegedly sold in the United States at less than fair value, the ITC assessed the conditions of competition, the volume and price effects of the cumulated subject imports, and the impact of cumulated subject imports.

_____

        [16] See Views of the Commission on Remand, pp. 12-19.

Sidor points out that the only reason the ITC found imports from Egypt, South Africa, and Venezuela not to be negligible is because it aggregated them with those from Germany. In addition to contesting the negligibility of the German imports and therefore their cumulation, as indicated above, Sidor takes the position that subject imports from Venezuela have remained negligible in their own right and should not be cumulated because, of the foregoing factors, the ITC misinterpreted or misapplied fungibility, geographic overlap, channels of distribution, and domestic-market trends. In sum, Sidor contests the presence of substantial evidence on the record in support of the ITC's cumulation of subject imports from Venezuela. See generally Sidor Objections, pp. 21-24. But that standard applies to final Commission determinations per 19 U.S.C. §1516a(b)(1)(B)(i), whereas the standard of review for the preliminary determination at bar remains more narrow, to wit, whether or not it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 19 U.S.C. §1516a(b)(1)(A). The court cannot and therefore does not conclude that the Views of the Commission on Remand run aground for any of these reasons, given the fleeting statutory mandate that the ITC determine preliminarily whether there is at least a "reasonable indication" that an industry in the United States is materially injured by reason of imports of subject merchandise that are not negligible. 19 U.S.C. §1673b(a)(1).

                                 III

     In view of the foregoing, the <u>Views of the Commission on</u>

<u>Remand</u> should be affirmed.  Final judgment will enter accordingly.

     So ordered.

Dated: New York, New York
       September 13, 2002


                          _____
                                        Judge